APPEAL NO. 24-4670

_____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Appellee,

v.

JOHNATHAN C. MCCASLAN,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION
_____

BRIEF OF APPELLEE
_____

BROOK B. ANDREWS
ACTING UNITED STATES ATTORNEY

WILLIAM J. WATKINS, JR.
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, South Carolina 29601

ATTORNEYS FOR APPELLEE

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE CASE ........................................................ 1-12

SUMMARY OF THE ARGUMENT ............................................... 12-25

ARGUMENT:

I.    **Whether the evidence that McCaslan sent threatening letters containing a powdery substance to Rice Street and the Police Department was sufficient to sustain the Jury's verdict on counts three and four.**

II.   **Whether the district court abused its discretion in finding that the Government had made a prima facie showing that the Rice Street mailing, Calhoun Falls evidence bag, and DNA from the back of the stamp were what they purported to be.**

CONCLUSION ........................................................................ 25-26

CERTIFICATE OF COMPLIANCE ............................................ 27

CERTIFICATE OF SERVICE .................................................... 28

i

TABLE OF AUTHORITIES

**Federal Cases**

*Bell v. Brockett*, 922 F.3d 502 (4th Cir. 2019) ............................................................. 18

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................................. 14

*United States v. Cone*, 714 F.3d 197 (4th Cir. 2013) ..................................................... 13

*United States v. Daughtry*, 502 F.2d 1019 (5th Cir. 1974) ................................................ 21-22

*United States v. Davis*, 918 F.3d 397 (4th Cir. 2019) .......................................... 19, 23

*United States v. Dodd*, 579 F. App'x 897 (11th Cir. 2014) ........................................ 18

*United States v. Godinez*, 7 F.4th 628 (7th Cir. 2021) ............................................... 21

*United States v. Hicks*, 64 F.4th 546 (4th Cir. 2023) .................................................. 13

*United States v. Howard-Arias*, 679 F.2d 363 (4th Cir. 1982) ...................................... 19-22

*United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009) ........................................... 23

*United States v. Lefsih*, 867 F.3d 459 (4th Cir. 2017) ................................................ 14

*United States v. McCabe*, 103 F.4th 259 (4th Cir. 2024) ........................................... 18

*United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015) ......................... 14

*United States v. Santiago*, 2016 WL 954819 (S.D.N.Y. Mar. 11, 2016) .................... 17

*United States v. Small*, 944 F.3d 490 (4th Cir. 2019) ............................................... 14

*United States v. Thomas*, 414 F.2d 792 (4th Cir. 1969) ........................................... 25

*United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009) ............................................ 19

*United States v. Wardrick*, 141 F.3d 1161 (4th Cir. 1998) ........................................ 21

**Federal Statutes**

18 U.S.C. § 1038 ......................................................................................................... 17

18 U.S.C. §§ 1291, 3742 ............................................................................................... 1

**Other**

Fed. R. Crim. P. 52 ..................................................................................................... 23

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this appeal from a final decision of the district court in a criminal case. *See* 18 U.S.C. §§ 1291, 3742. Judgment was entered against Appellant Johnathan C. McCaslan on December 5, 2024. JA15.  McCaslan filed a notice of appeal on December 16, 2024. JA15.

## ISSUES

I.    Whether the evidence that McCaslan sent threatening letters containing a powdery substance to rice street and the police department was sufficient to sustain the jury's verdict on Counts Three and Four.

II.   Whether the district court abused its discretion in finding that the government had made a prima facie showing that the rice street mailing, Calhoun Falls evidence bag, and DNA from the back of the stamp were what they purported to be.

## STATEMENT OF THE CASE

A jury of his peers returned guilty verdicts against Johnathan C. McCaslan on all counts of the superseding indictment. JA767. Count One charged stalking, Count Two charged mailing a threatening communication, Counts Three and Four charged the sending of hoax letters. JA18-20. The crimes in this case centered on the small town of Calhoun Falls and fallout from divorce proceedings involving Johnathan C. McCaslan ("McCaslan") and Kimberly McCaslan ("Kimberly"). JA471.   The evidence showed that McCaslan sought to frame his wife for crimes she did not

1

commit. His goal was Kimberly's incarceration and final victory in their divorce and child custody proceedings. JA661.

United States Postal Inspectors and the State Law Enforcement Division (SLED) became involved on November 9, 2021, when Calhoun Falls narcotics officer Jordan Smith reported that he and his fiancé Tamera Lee received an envelope in the mail that contained a threatening letter and an unknown powdery substance. JA235-236. The receipt of the letter and much of its handling was captured on a Ring video camera mounted on the front of Smith and Lee's home—318 Rice Street, Calhoun Falls, South Carolina. JA234. Two clips from the video were introduced into evidence and played for the jury. JA774.

Concerned the substance in the envelope was fentanyl or some other dangerous agent, Smith instructed Lee to wash with cold water and to don protective gloves. JA258-259. Smith reported the incident to his chief of police who instructed him to call the Abbeville County Sheriff's Office and Treaco Hoover, a local officer with the Calhoun Falls Police Department. JA259. The substance field-tested positive for fentanyl, but a later laboratory analysis indicated the substance in the letter had the presence of milk based infant formula, water, and linseed oil. JA259.

The following was typed in the letter:

YOU THINK YOU CAN PRESS CHARGES AGAINST ME. I'VE ALREADY BEAT YOU AT YOUR ON GAME. I GOT CONNECTION TO. YOU CAN NOT TOUCH ME. I KNOW HOW DIRTY YOU ARE. YOU AND THAT DOG YOU LIVE WITH CAN

2

KISS MY ASS. IF I SEE HER WHEN I WORK WITH HER AGAIN I WILL BEAT HER ASS. YOU WILL GET WHATS COMING TO YOU. YOU CAN NOT HIDE BEHIND THAT BADGE. JA 239, SA2

Based on the letter's contents, Smith and Lee suspected Kimberly. JA66. Kimberly was the only person Smith had active warrants for (DUS and giving false information) who Lee also previously worked with. JA260. Lee confirmed that she and Kimberly did have a work-related dispute a few months prior while both were employees at a local nursing home. JA239-240.  McCaslan knew Kimberly and Lee had worked together and that they once had a disagreement on the job. JA584-585. Regarding the warrants Smith had for Kimberly,[1] it was McCaslan who informed him that Kimberly's license was suspended and when he expected her to be in Calhoun Falls. JA266; JA577-578.

The day before receipt of the letter, McCaslan saw Smith at a local convenience store. JA263. McCaslan claimed he had information that Kimberly was questioning why Calhoun Falls needed a narcotics officer, wanted to know about Smith's job duties, and was interested in the location of Smith's residence. JA263. McCaslan also told Smith that he had witnessed Kimberly and her son driving by 318 Rice Street to video record the premises. JA263-264.

---

[1] The encounter that led to the warrants occurred on October 9, 2021, at the Savannah Grill in Calhoun Falls. JA264. Kimberly was driving under suspension and initially lied to Smith about having a valid license. Smith did not write Kimberly a ticket.  He let her call a licensed driver to come pick her up. JA265.

Smith and Lee made photographs of the envelope and the threatening letter before law enforcement officers arrived at the house. JA260-261, SA1-2. The pictures they made were introduced into evidence. JA774. Hoover and Smith placed the actual letter and envelope into an evidence bag and sealed it. JA247, JA261. Hoover transported the evidence bag to the Calhoun Falls Police Department. JA261. A few hours later members of the SLED bomb squad arrived and located the sealed evidence bag on Hoover's desk. JA323-324, JA417. Members of the bomb squad cut open the evidence bag, obtained some of the powdery material from the letter, and tested the powder. JA325-326, JA343. After determining that the substance was nonlethal, bomb squad members put the letter back into the envelope and left it on the desk where they found it. JA326.

After the bomb squad signaled "all clear" SLED agents Jake Drake and Adam Slizewski entered the police department to recover the evidence. JA417. SA Drake described what happened as follows:

> We went in and found what was described by the bomb squad, the evidence bag that contained the items that we had previously seen pictures of from Tamara [Lee] and Jordan [Smith], and then what was described to us by the bomb squad. We collected that bag and took it into evidence. JA393.

SA Slizewski was asked if he was comfortable that the evidence recovered from the office was the same evidence Smith and Lee encountered at 318 Rice Street. He testified as follows:

4

We felt comfortable with where the evidence came from. We had photographs from Tamara Lee and Officer Smith. We had the Ring doorbell cameras, and we spoke with Tamara Lee. We interviewed Tamara Lee and Officer Smith and Assistant Chief Treaco Hoover that night. JA420.

 SLED agents kept the items in a lockbox and transported them to the SLED laboratory the next day. JA395. The letter and envelope remained at the SLED laboratory until they were transported to a SLED field office in anticipation of the jury trial.

At trial, Smith and Lee identified the photographs of the letter and envelope and the actual letter and envelope. SA1-2.  They compared the photographs to the originals and testified that Government's exhibits 3a-3c[2] were the actual letter and envelope received at 318 Rice Street. JA 242-243, 262-262. Chrissy Bogan, a clerk at the local post office, also identified the envelope. JA299.  Bogan recalled handling the envelope and manually crossing out the 41-cent stamps so they could not be used again. JA300.

On November 10, 2021, the Calhoun Falls Post Office intercepted a suspicious letter addressed to the Calhoun Fall Police Department. SA4. Postal inspectors, SLED agents, and the bomb squad  returned to Calhoun Falls to deal with the second letter.  The following was typed in the letter:

---

[2] Government's Exhibit 3a was the letter inside the envelope, 3b the envelope, and 3c a cut out from the envelope containing the stamps.

PERRY I KNOW HOW DIRTY YOU ARE. YOU TRIED TO GET ME LOCKED UP. YOU TIRED TO GET MY KID IN TROUBLE. YOU WILL PAY FOR WHAT YOU DONE. I THOUGHT WE WERE BETTER THAN THAT. I'VE DONE FAVORS FOR YOUR FELLOW OFFICERS AND GET TREATED LIKE THIS. I WILL START TALKING IF I GO TO JAIL. TELL YOUR ASSISTANT CHIEF TO PAY ATTENTION. JA 358-359, SA5.

The only "Perry" working for the Calhoun Falls Police Department was Perry Hill, a part-time officer. JA359. At trial, Hill testified that he believed the letter was meant for him and that he suspected that Kimberly was the author. JA359. As grounds for this, Hill stated that on October 24, 2021, he was dispatched to the marital home of the McCaslans in reference to a stolen generator. JA355. Kimberly sold the generator and had her son transport it to the buyer. JA434. Hill spoke with the son until Kimberly interrupted and asked that Hill direct all questions to her because the son was a minor. JA434-435.  The encounter lasted approximately 20 to 25 minutes. JA356.[3]

McCaslan wanted Kimberly and her son arrested for the generator incident and the earlier encounter with Smith at the Savannah Grill. JA357. McCaslan met with Hoover and Smith and learned that the generator matter and Savannah Grill encounter would be presented to a local judge. JA593. On October 29, 2021, Smith and Hoover (who was following up for Hill on the generator incident) visited the

---

[3] The letter asserts that the writer was doing "favors" for the local police.  Perry Hill testified that the only person he ever heard claim that Kimberly was doing "favors" was McCaslan. JA360.

local magistrate together. JA268. Smith was successful in obtaining his warrants, but the magistrate ruled that the generator issue was a family court dispute and declined to sign warrants for Kimberly and her son. JA268. McCaslan was upset that only one set of warrants issued. JA357, JA269.

Around the same time, the state nursing board sent an email to aparamedic01.hotmail.com, which the parties stipulated belonged to McCaslan. JA389. The email asked Kimberly for a statement related to a February 2021 traffic stop when she was arrested for driving under suspension and possession of Gabapentin without a valid prescription. JA368-369. In previous years when she renewed her license, Kimberly had always used a personal email address. JA 370-371. The renewal for 2020 contained McCaslan's email address in the contact information. JA372. A handwriting expert reviewed the envelope which contained the 2020 renewal and opined with a high degree of probability that McCaslan wrote the address portion. JA491.

The nursing board's email to aparamedic01.hotmail.com requested a response by return email. JA368. The response, contrary to the instructions, was sent by mail and received on October 27, 2021. JA373, JA377.[4] The letter, purportedly from Kimberly, admitted to stealing controlled substances, forging prescriptions, and

---

[4] Had McCaslan replied to the email, it would have been simple to prove that he was the author of the response. Thus, he mailed the response. Unfortunately, the board did not preserve this envelope for testing.

working out of state contrary to licensing regulations. JA376. The letter urged the board to review the guardian ad litem report from the divorce case. JA376. Kimberly did not write nor send the letter which threatened to derail a favorable resolution with the nursing board. JA446.

SLED agents interviewed Kimberly as part of the investigation. At the time of the interview, Kimberly was residing at a sober living facility. JA581. Agents testified that she "had no idea she had any warrants" related to the Savannah Grill incident and evinced genuine surprise when told of their existence. JA582. Smith also testified that he did not issue Kimberly tickets at the scene and never gave Kimberly any indication that she would be charged in the future. JA265. Kimberly did not know about the threatening letters sent to Lee and Hill. She believed that SLED was interviewing her related to the generator until they disclosed the true purpose of the meeting. JA432. There was no evidence that she knew Hoover or Hill had sought warrants for her and her son.

At trial, the Government emphasized the timeline of events as summarized below. SA6

| Date | Event | Significance as argued to the jury |
|------|-------|-----------------------------------|
| 10/9/2021 | Officer Smith stopped Kimberly at the Savannah Grill for driving under suspension. SA6. | McCaslan informed Smith of Kimberly being suspended and told him when to expect her in town. He was trying to have her arrested. JA468. |

8

| | | |
|---|---|---|
| 10/21/2021 | The nursing board sent an email to aparamedic01.hotmail.com requesting a written statement from Kimberly. SA6. | This was McCaslan's email address. Kimberly never received the communication from the board. JA445. |
| 10/24/2021 | McCaslan reported Kimberly to Perry Hill for selling a generator which was marital property. Kimberly and Hill had an interaction related to the generator. SA6. | |
| 10/27/2021 | The nursing board received in the mail a signed statement purportedly from Kimberly admitting to various crimes and instructing the board to obtain the guardian ad litem report. SA6. | The logical inference is that McCaslan wrote and sent the letter in response to the 10/21/2021 email. McCaslan sought to prohibit Kimberly from earning a living. JA667. |
| 10/27/2021 | McCaslan spoke with CFPD officers and learned that Hoover was planning to seek warrants for Kimberly related to the generator incident. SA6. | McCaslan was pushing for Kimberly's arrest. |
| 10/29/2021 | Officer Smith obtained warrants for Kimberly related to the Savannah Grill incident. Smith also told McCaslan he was seeking warrants on Kimberly. SA6. | |
| 10/29/2021 or 10/30/2021 | McCaslan learned from Hill and Smith that the judge declined to issue warrants on the generator incident because he thought it was a family court matter. SA6 | |
| 11/8/2021 | McCaslan told Smith that Kimberly had been asking questions about him and his duties at the CFPD. SA6. | McCaslan is putting in Smith's mind that Kimberly is a danger to him and his family. JA671. |
| 11/9/2021 | A threatening letter with powder arrived at 318 Rice Street. SA6 | There is no evidence Kimberly knew about Smith obtaining warrants for her as mentioned in the |

| | | letter. McCaslan, however, knew this information. JA673. |
|---|---|---|
| 11/10/2021 | A threatening letter with white powder addressed to Hill was intercepted at the Post Office. SA6. | There is no evidence Kimberly had knowledge that the CFPD sought warrants for her as implied in the letter. McCaslan, however, knew this information. JA683. |

A significant focus of McCaslan's pretrial motions and objections at trial was exclusion of the Rice Street letter from evidence. He sought to do so because his DNA was found on the back of one of the 41-cent stamps. An expert witness opined that "the DNA profile is approximately 360 trillion times more likely if it is Jonathan McCaslan and three unidentified unrelated individuals contributing than if four unidentified individuals had contributed." JA552.

Because Hoover died from a cardiac incident prior to trial, McCaslan argued that the Government could not establish a proper chain of custody or authenticate the evidence. During pretrial motions and in response to questioning from the court, defense counsel admitted that he had no evidence that Hoover tampered with the Rice Street mailing. JA150. Defense counsel then conceded that Lee and Smith could testify that "this is the letter we got." JA151. Counsel continued: "My position is that the stamp, the DNA on the stamp, that it is not readily identifiable" and thus

10

Lee and Smith cannot identify "the genetic material that the government maintains is associated with those stamps." JA151-152.

The court's response was "Well, I mean, nobody – at the time that was put in the bag, nobody knew there was genetic material on it." JA152. The Government agreed and pointed out that even if Hoover could be supernaturally resurrected to testify at trial, he could not identify DNA molecules on the back of a stamp. JA158. The persons who could testify about finding and testing DNA were the SLED scientists who prepared the samples and tested for DNA. JA158. The court promised defense counsel wide berth to cross-examine on the fact that Hoover was alone with the evidence on the trip from Rice Street to the police station. JA160. Defense counsel was also permitted to question law enforcement witnesses on the best practices for handling evidence and the importance of chain of custody. JA 275, JA 340-341, JA 402-403.

Defense counsel vigorously cross-examined witnesses on the DNA testing. Defense seized upon the fact that a SLED employee's DNA was found on the envelope flap of the Rice Street letter; however, this alleged contamination did not occur until *after* the preparation and testing of the stamps. JA522-523, JA546. Defense counsel tried to prohibit the SLED scientist from testifying about finding McCaslan's DNA, but the court overruled the objection and held that the post-testing contamination issue went to weight and not admissibility. JA547.

11

In closing arguments defense counsel raised the chain of custody issues and contamination. JA692; JA701.  The jury was not persuaded and returned verdicts of guilt on all counts.  The district imposed a probationary sentence on McCaslan. JA92.

McCaslan filed a timely notice of appeal.

## SUMMARY OF THE ARGUMENT

McCaslan cannot met the heavy burden of establishing that there was insufficient evidence to convict him on Counts three and four.  In the light most favorable to the Government, the evidence showed that McCaslan wrote threatening letters and included a powdery substance with the letters.  The threats coupled with the powder caused the recipients to reasonably believe that they were in danger because of exposure to the substances. The SLED bomb squad was dispatched twice because of  the powder McCaslan placed in the envelopes.

The district court did not abuse its discretion in admitting the Rice Street mailing into evidence.  Based on the testimony of a postal employee who struck through the 41-cent stamps on the letter, testimony from Lee and Smith, pictures of the evidence taken by Lee and Smith, the Ring video footage from the house, interviews with Lee, Smith, and Hoover, testimony from a bomb squad member who cut open the sealed evidence bag in Hoover's office, testimony form the SLED agents who retrieved the evidence after the bomb squad announced "all clear,"

testimony from the serologist who prepared the samples from the stamp, and testimony from the scientist who tested the stamp, the Government met the prima facie showing that the collected evidence was what it purported to be. However, to the extent there was an error admitting the DNA-related evidence, the error was harmless based on the strong circumstantial evidence showing that McCaslan was person behind the threatening letters.

## ARGUMENT

I. WHETHER THE EVIDENCE THAT MCCASLAN SENT THREATENING LETTERS CONTAINING A POWDERY SUBSTANCE TO RICE STREET AND THE POLICE DEPARTMENT WAS SUFFICIENT TO SUSTAIN THE JURY'S VERDICT ON COUNTS THREE AND FOUR.

A. **Standard of Review**

As the defendant moved for a judgment of acquittal, this Court reviews the sufficiency of the evidence de novo. *United States v.* Hicks, 64 F.4th 546, 550 (4th Cir. 2023). This Court inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt" when the evidence is viewed in the light most favorable to the government. *United States v. Robinson*, 855 F.3d 265, 268 (4th Cir. 2017) (internal quotation marks omitted); *United States v. Cone*, 714 F.3d 197, 212 (4th Cir. 2013). The Court "review[s] both direct and circumstantial evidence, and accord[s] the government all reasonable inferences from the facts shown to those sought to be established." *United States v.*

*Lefsih*, 867 F.3d 459, 465 (4th Cir. 2017) (quotation marks omitted).  In other words, a jury verdict must be sustained if there is substantial evidence to support it. *United States v. Blue,* 957 F.2d 106, 107 (4th Cir. 1992).

On appeal, "reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015).

### B.    Analysis

McCaslan cannot meet the substantial burden of challenging the sufficiency of the Government's evidence.  "A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" *United States v. Small*, 944 F.3d 490, 499 (4th Cir. 2019) (internal quotation marks omitted).  In reviewing the sufficiency of the evidence following a conviction, a court is to construe the evidence in the light most favorable to the Government, assuming its credibility, and drawing all favorable inferences from it, and must sustain the jury's verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A jury verdict will be sustained so long as "there is substantial evidence in the record to support it." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a

defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez-Soriano, 931 F.3d 281, 286 (4th Cir. 2019)* (cleaned up). In making this determination, this Court will not resolve conflicts in the evidence or evaluate witness credibility. *Savage, 885 F.3d at 219*.

Without objection from either party, the district court charged the jury as follows on Counts three and four:

> First, that the defendant knowingly engaged in conduct with the intent to convey false or misleading information;

> Second, that the defendant conveyed information under circumstances in which such information may reasonably have been believed; and,

> Third, that the information indicated that a violation of biological -- that a violation of biological weapons statute, chemical weapons statute, or weapons of mass destruction statute was taking place or would take place. JA744

As to the first element, the Government introduced evidence that McCaslan sent threatening letters in the mail containing a white powdery substance. McCaslan's DNA was found on a 41-cent stamp affixed to the Rice Street letter. JA552. The information about Smith obtaining warrants related to the Savannah Grill incident was known to McCaslan, but not Kimberly. J265, JA268. Moreover, just the day before the letter arrived McCaslan told Smith that Kimberly had been asking questions about him and his duties at the police department—the logical inference was that McCaslan was preparing Smith for receipt of the letter and ensuring he would believe that Kimberly was the author. JA263. The letter to Hill

15

was also posted with 41-cent stamps. SA4.  Information about the failed attempt to obtain a warrant related to the generator was known by McCaslan but not Kimberly. JA268-269.

The second and third elements are also easily satisfied. The letters, each accompanied with white power, conveyed information that could be reasonably believed, *i.e.*, that the recipients were enemies of Kimberly, and she was seeking to harm them with the powder.  Smith immediately told Lee to wash her hands and don protective gloves. JA236.  She swept the powder off the front porch when she "realized that it could be something harmful" or even "deadly." JA236. Smith tracked down that letter carrier and advised him to wash his hands.  JA295.  Hoover and Smith field tested the substance which was later tested by the SLED bomb squad. The bomb squad clothed themselves with personal protective gear before handling the letter. JA324. Agents testified that threatening letters with powder raise concerns about fentanyl, anthrax, or other dangerous substances. JA576.

McCaslan's main argument is that because the letters did not reference the powder, false information was not conveyed that the recipients were endangered by a chemical or biological attack. *Appellant's Brief* at 19. Isolating the letters from the powder, Appellant contends, would not allow a reader to "deduce that any powder or substance accompanied the letters." *Appellant's Brief* at 19.

Courts have dealt with this very argument and have rejected it. In *United States v. Santiago*, 2016 WL 954819, at *2 (S.D.N.Y. Mar. 11, 2016), the defendant sought to dismiss a § 1038(a)(1) charge because he made no explicit statements about an attack in the letter he sent to government employees. The Court declined to grant the motion.

> With regard to the False Information and Hoaxes Act, 18 U.S.C. § 1038(a)(1), the statute requires that a defendant engage in conduct intended to convey false or misleading information that a chemical attack is taking place and that it is reasonable to believe that such an attack is taking place. Defendant notes that he did not write that an attack was occurring. But the False Information and Hoaxes Act does not require a defendant to make any explicit statements. Thus, defendant's focus on the lack of a false statement is misplaced. Importantly, the statute focuses on a defendant's conduct. **Here, a jury could conclude that defendant's conduct—placing a white powdery substance into an envelope with a note containing the hostile messages—intended to convey the false information that the envelope contained a dangerous chemical substance**. . . . Further, a jury could also conclude that it was reasonable for the IRS employee who opened the envelope to see the white powdery substance, read the notice, and believe that an attack was taking place. Thus, the Information alleges conduct that a jury could conclude violates the False Information and Hoaxes Act.

*Santiago*, 2016 WL 954819, at *2 (emphasis added).

McCaslan seeks to avoid the reasoning of *Santiago* by asserting that "the government did not indict Section 1038(a)'s 'conduct' element." *Appellant's Brief* at 18.[5] This is incorrect. The indictment specifically states that McCaslan wrote the

---

[5] To the extent McCaslan alleges the indictment was defective, this argument has been waived. "Appellants may not raise arguments on appeal that were not first

letters, identifies the threatening language, and notes that he placed the letters in envelopes with a powdery substance. JA19-20. These specific actions are his "conduct" under the statute.[6] *See also United States v. Dodd*, 579 F. App'x 897, 898 (11th Cir. 2014) (evidence that defendant sent the powder-filled letter, wrote the threatening communications and deposited them in the mail was sufficient to convict.).

In summary, construing the evidence in the light most favorable to the Government, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

## II. Whether the district court abused its discretion in finding that the Government had made a prima facie showing that the Rice Street mailing, Calhoun Falls evidence bag, and DNA from the back of the stamp were what they purported to be.

### A. Standard of Review

This Court reviews a trial court's ruling on the admission of evidence for abuse of discretion. *United States v. McCabe*, 103 F.4th 259, 275 (4th Cir. 2024).

---

presented below to the district court." *Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019).

[6] Conduct is defined as "the act, manner, or process of carrying on." *The Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary/conduct (last visited 3/27/2025).

**B. Analysis**

The district court properly admitted the evidence at issue. The Government made a threshold showing that enabled the jury to reasonably find that the evidence was authentic.

"The chain of custody rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence." *United States v. Howard-Arias,* 679 F.2d 363, 366 (4th Cir. 1982) (internal quotation marks omitted). "The purpose of this threshold requirement is to establish that the item to be introduced . . . is what it purports to be." *Id.* "Therefore, the ultimate question is whether the authentication testimony was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *Id.* This Court has recognized that "a proponent need not establish a perfect chain of custody or documentary evidence to support their admissibility." *United States v. Vidacak*, 553 F.3d 344, 350 (4th Cir. 2009). "Indeed, the prima facie showing may be accomplished largely by offering circumstantial evidence that the documents in question are what they purport to be." *Id.* The trial judge "must merely be able to conclude that the jury could reasonably find that the evidence is authentic, not that the jury necessarily would so find." *United States v. Davis*, 918 F.3d 397, 402 (4th Cir. 2019) (internal quotation marks omitted).

19

The Government provided ample evidence that the Rice Steet mailing was what it purported to be.  In authenticating the evidence, the Government:

- called post office clerk who remembered marking through the 41-cent stamps on the envelope;

- called the recipients of the letter to identify it and explain that Hoover took it in a sealed evidence bag to the police station;

- introduced the Ring video of Lee receiving and reading the letter;

- introduced photos of the mailing taken by Lee and Smith;

- called members of the bomb squad who cut open the sealed evidence bag found on Hoover's desk;

- called both SLED agents who took custody of the mailing after the bomb squad finished its work;

- called the serologist from the SLED laboratory who made a cutting from the stamp and prepared the sample for testing; and

- called the scientist who performed the testing and discovered McCaslan's DNA.

The Government obviously did not call Hoover because he died before trial; however, SLED agents interviewed Hoover just a few hours after he and Smith bagged and sealed the Rice Street mailing. In *Howard-Arias*, this Court found no abuse of discretion when the trial court admitted drug evidence.  In that case, the

20

Government called "[t]he Coast Guard officer who seized and tested the marijuana, the officer to whom he surrendered it, the DEA custodian at Norfolk, and the DEA chemist." *Howard-Arias*, 679 F.2d at 365-366. The Government did not call the officer "who received the marijuana from the Coast Guard for transit to the DEA in Norfolk." *Id.* at 366. Because no evidence existed of tampering, this Court declined to disturb the district court's ruling. *See also United States v. Wardrick*, 141 F.3d 1161 (4th Cir. 1998) (no evidence of tampering and thus one missing link did not prohibit admission of evidence).

In pretrial hearings, counsel for McCaslan admitted that he had no evidence that the Rice Street letter had been tampered with. JA150. *United States v. Marzette*, 105 F.4th 1014, 1019 (7th Cir. 2024) ("Absent any evidence of tampering, the government's chain-of-custody evidence receives a presumption of regularity."). McCaslan speculated that Hoover could have tampered with the item on the way to the police station and he was allowed to make this argument to the jury. JA70. But mere speculation cannot serve as bar to admissibility when the standard is a prima facie showing. *See United States v. Godinez*, 7 F.4th 628, 636 (7th Cir. 2021) ("And any gaps in the chain of custody go to the weight given the evidence, not its admissibility."); *United States v. Daughtry*, 502 F.2d 1019, 1020 (5th Cir. 1974) ("Appellant has fully failed to show anything but opportunity for the agents in this case to misbehave or malperform. Absent a minimal showing of ill will, bad faith,

other evil motivation or some physical evidence of tampering, the District Court properly admitted the evidence notwithstanding the opportunity for unlawful tampering.").

Regarding the Calhoun Falls evidence bag cut open by the bomb squad, McCaslan complains that the squad members "were not present when the items were first placed in the bag." *Appellant's Brief* at 23. While this is true, the Government called two witnesses—Smith and Lee—who were present when the items were placed in the bag. JA242, JA261. Because no evidence of tampering existed, the court had no reason to believe that the sealed bag and its contents were not in the same condition as they were when taken from the porch on Rice Street. *See Howard-Arias*, 679 F.2d at 366.

Finally, McCaslan argues that contamination upends the chain of custody. He argues that because the forensic scientist's DNA was transmitted to the envelope flap "when she took custody of that sample from May 18 until August 18, 2022," *Appellant's Brief* at 24, the testing of the stamps is suspect. McCaslan ignores that the stamps were tested in December 2021—many months before the scientist's DNA "contaminated" the envelope flap. JA516, JA546, JA557. The court permitted McCaslan to argue to the jury that the handling of the flap in 2022 could undermine confidence in SLED laboratory procedures but allowed the 2021 testing of the stamps into evidence because the government had made the requisite threshold

22

showing.  The court's ruling is commonsensical: no evidence of contamination existed at the time the stamps were tested; therefore, the scientist's touching of the envelope flap months later lacked relevance and did not influence the validity of the earlier test.

In summary, the trial judge properly concluded that the jury could reasonably find that the mailing, bag, and DNA samples were authentic.  *See Davis*, 918 F.3d at 402.  The judge did not abuse his discretion.

Even if this Court finds an abuse of discretion, any error in admitting the Rice Street items was harmless. *See United States v. Johnson*, 587 F.3d 625, 637 (4th Cir. 2009) (erroneous evidentiary rulings are subject to harmless error review). The criminal rules counsel that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52.

In the present case, the jury's verdict would have been the same without the stamps or DNA evidence. The timeline of events and content of the letters point to McCaslan:

- October 9, 2021: Kimberly's encounter with Smith at the Savannah Grill was orchestrated by McCaslan in an effort to get Kimberly in trouble with the police.

- October 21, 2021: McCaslan received the email from the nursing board asking for a statement.

23

- October 24, 2021: Strife intensified over the generator as McCaslan reported Kimberly to law enforcement.

- October 27, 2021: The nursing board received Kimberly's alleged statement confessing to multiple additional crimes and urging the board to obtain the guardian ad litem report.

- October 27, 2021: McCaslan learned law enforcement would soon go to a magistrate to seek warrants related to the generator.

- October 29, 2021: Smith obtained warrants for the Savannah Grill incident. The magistrate declined to issue warrants related to the generator because he saw it as a family court matter.

- October 29 or 30, 2021: McCaslan learned that the magistrate did not issue warrants for Kimberly and her son, but that Smith was successful in obtaining warrants for the Savannah Grill encounter.

- November 8, 2021: McCaslan met Smith at a local convenience store and claimed that Kimberly has been asking questions about him.

- November 9, 2021: Smith and Lee received the threatening letter.

- November 10, 2021: The post office intercepted a threatening letter meant for Hill.

The evidence at trial showed that Kimberly did not know that (1) Smith obtained warrants for her, or (2) Hoover unsuccessfully brought the generator issue

24

to the magistrate. The writer of the letters—McCaslan—knew both facts.  The Rice Street letter complained that Smith had "pressed charges" against the writer. The second letter accused Hill of trying (not succeeding) in getting the writer and the writer's child "locked up." The Hill letter referenced the writer doing "favors" for the police. Hill testified that the only person he ever heard claim Kimberly was doing "favors" was McCaslan. Although the letters were unsigned, it was obvious who the recipients were supposed to suspect: Kimberly.

McCaslan asserts that the DNA evidence was the only direct evidence linking him with the crimes.  He ignores that the law makes no distinction between direct and circumstantial evidence: both are permissible and subject to the jury's role in weighing evidence. *See United States v. Thomas*, 414 F.2d 792, 792 (4th Cir. 1969).

Consequently, any error in admitting the evidence associated with the DNA was harmless.

## CONCLUSION

McCaslan attempted to frame his wife for crimes she did not commit.  He endeavored to have her nursing license revoked so she could not earn a living.  He also tried to have her arrested for threatening letters that he authored.

McCaslan cannot meet the heavy burden of showing that insufficient evidence existed to convict on the hoax letters.  He caused innocent people to fear that they

25

were endangered by a chemical or biological agent. The threats were so significant that the SLED bomb squad was twice summoned to Calhoun Falls.

Based on pictures and video taken at the scene and witness testimony, the Rice Street exhibits were properly authenticated and introduced into evidence. Any error in their admission is harmless because of the circumstantial evidence linking McCaslan to the charged offenses.

Respectfully submitted,

BROOK B. ANDREWS
ACTING UNITED STATES ATTORNEY

BY:  *s/William J. Watkins, Jr.*
William J. Watkins, Jr.   (Fed.ID.#07863)
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, South Carolina 29601
(864) 282-2100

ATTORNEYS FOR APPELLEE

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 24-4670          Caption:   United States of America vs. Johnathan C. McCaslan

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief
may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed
16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650
lines; line count may be used only with monospaced type]*

      [X]   this brief contains 6017 words, excluding the parts of the brief
           exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

      [ ]   this brief uses a monospaced typeface and contains _____ lines of
           text, excluding the parts of the brief exempted by Fed. R. App. P.
           32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times;
12-point font must be used with monospaced typeface, such as Courier or Courier New]*

      [X]   this brief has been prepared in a proportionally spaced typeface using
           Microsoft Word 2010 , in 14-point Times New Roman; or

      [ ]   this brief has been prepared in a monospaced typeface using
           _____[*state name and version of word processing program*] with
           _____ [*state number of characters per inch and name of type style*].

*s/William J. Watkins, Jr.*
Assistant United States Attorney
Dated: April 7, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NUMBER 24-4670 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNATHAN C. MCCASLAN, | ) | |
| | ) | |
| Appellant. | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF user:

CHRISTOPHER W. ADAMS                    MATTHEW K. WINCHESTER
Adams & Bischoff, LLC                          Law Offices of Matthew K. Winchester
171 Church Street, Suite 360                   3151 Maple Drive, NE
Charleston, SC 29401                             Atlanta, Georgia 30305
Telephone: (843) 277-0090                     Telephone: (678) 517-6894
E-mail: adams.c@me.com                       E-mail: K.winchestercb@gmail.com


BY:  *s/William J. Watkins, Jr.*
William J. Watkins, Jr.   (Fed.ID.#07863)
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, South Carolina 29601
(864) 282-2100

28

2